UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARRY VEGA, *et al.*, | : | CIVIL NO. 3:17-CV-0107(JBA) |
|     *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, *et al.*, | : | JANUARY 25, 2018 |
|     *Defendants.* | | |

### REPLY MEMORANDUM IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS (Doc. 52)

The defendants file this reply memorandum in support of their motion to dismiss (Doc. 52). *See* Local Rule 7(d); *see also* (Doc. 61). The Court should grant that motion and dismiss the entire action. The defendants are immune from suit.

**1. Qualified immunity bars the money damages claims.**

Qualified immunity bars both the conditions-of-confinement claims and the access-to-court claims seeking damages from the individual defendants.

    **a. Conditions of confinement**

Plaintiffs' primary legal basis for seeking damages from the defendants is their condition-of-confinement claims. As noted by the defendants in their original motion, no case law from this circuit or the United States Supreme Court has ever recognized a cause of action under the Eighth Amendment premised upon exposure to radon in prison. In response, plaintiffs argue the Supreme Court's opinion in *Helling v. McKinney*, 509 U.S. 25, 29 (1993) is sufficient clearly-established law to overcome the defendants' immunity from the conditions claims. (Doc. 61 p. 17). On

its surface, plaintiffs' argument seems to suggest that the second-hand smoke claims recognized for the first time in *Helling* are sufficient to apprise prison officials that an odorless, colorless gas naturally occurring in the environment could, if not properly monitored, create conditions of confinement that are cruel and unusual and violate the Eighth Amendment. When examined closely, plaintiffs actually argue that the defendants breached several purported standards of care ostensibly established in various statutes and EPA or World Health Organization standards. (Doc. 61 p. 1, 4, 6, 7, 12, 13, 18); (Doc. 49 p. 22, 24, 27). Plaintiffs even stretch their argument to include a comparison of how corrections officials in Colorado responded to environmental concerns. (Doc. 61 p. 4); (Doc. 49 p. 37). These attempts all fail to defeat the defendants' qualified immunity.

The failure is twofold. First, when plaintiffs argue that the defendants' conduct should have comported with EPA or WHO standards or with a particular statute, and when they compare defendants' conduct with that of corrections officials halfway across the country, plaintiffs essentially argue negligence claims disguised in constitutional robes. Arguing *via* legal comparison to those standards amounts to negligence or negligence *per se* theories, not constitutional tort arising to the level of criminal recklessness defined through case law. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003)("Deliberate indifference is a state of mind that is the equivalent of criminal recklessness.")(quotations omitted).

Second, plaintiffs do not bring this cause of action under any of the specific statutes that they reference. (Doc. 49 p. 37-41; 5); (Doc. 61 p. 12); (Doc. 49 p. 22, 24, 27). There is no dispute over this. Instead, plaintiffs sue under the Eighth and Fourteenth Amendments. They therefore need clearly-established case law placing it 'beyond debate' that the defendants' particular conduct violated the Eighth and Fourteenth Amendments, as opposed to some regulatory or statutory standard of care. The Supreme Court and Second Circuit have held this specifically:

"'[N]either federal nor state officials lose their [qualified] immunity by violating the clear command of a statute or regulation—of federal or of state law—unless that statute or regulation provides the basis for the cause of action sued upon.'" *Jamison v. Fischer*, 617 F. App'x 25, 28 (2d Cir. 2015)(Summary Order)(quoting *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also Wilson v. Layne*, 526 U.S. 603, 617 (1999)(abrogating, *inter alia*, *Ayeni v. Mottola*, 35 F.3d 680 (2d Cir. 1994)). Plaintiffs' reference to extraneous statutes and standards fails to defeat the defendants' immunity.

Other than misplaced reliance on standards and statutes, plaintiffs rely solely on *Helling v. McKinney* in their attempt to overcome the defendants' qualified immunity. (Doc. 61 p. 17). *Helling* is insufficient because it does not clearly establish that the defendants' particular conduct was unconstitutional beyond all debate. The *Helling* Court did not evaluate the constitutional implications of elevated radon gas regions or prison construction. The Court's decision did not

involve detecting radon gas or the lack of radon testing in prison. Nor did it involve radon remediation after discovery. And it most definitely did not involve failure to inform prisoners about radon levels during testing or remediation. *Helling* did not involve radon at all.

*Helling* therefore is not "particularized to the facts of the case." *See White*, 137 S. Ct. at 552. It does not demonstrate the "violative nature of *particular* conduct." *See Mullenix*, 136 S. Ct. at 308 (emphasis in original). And the purported rights' contours were therefore not "sufficiently definite." *See Estate of Devine v. Fusaro*, 2016 WL 183472, at *5 (D. Conn. Jan. 14, 2016)(Doc. 52-2 p. 15).

Even more instructive, the defendants in *Helling* received qualified immunity. Plaintiffs wholly ignore this in their brief, and make no effort to argue or distinguish this critical aspect of *Helling* that is detrimental to their case. *See* (Doc. 61 p. 14-19). Nor do they identify any other case for purposes of qualified immunity analysis. They certainly do not identify a Supreme Court or Second Circuit case discussing when radon exposure in prison amounts to a constitutional violation under the Eighth or Fourteenth Amendment. This is telling, especially given the plethora of decisions regarding qualified immunity issued in just the last few years (and months). *See* (Doc. 52-1 p. 10-11)(collecting cases). Just this week the Supreme Court once again admonished lower courts regarding this central tenet of qualified immunity analysis, noting, "[t]ellingly, neither the panel majority nor the [plaintiffs] have identified a single precedent much less a controlling case or

robust consensus of cases—finding a [constitutional] violation 'under similar circumstances.'" *District of Columbia v. Wesby*, No. 15-1485, 583 U.S. ___ 2018 WL 491521, at *12 (U.S. Jan. 22, 2018)(quoting *White*, 137 S. Ct. at 552).

And since the defendants filed their Motion to Dismiss (Doc. 52), the Second Circuit issued yet another decision supporting this: *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017). There, the Court reversed a bench-trial verdict that awarded money damages to a prisoner plaintiff. *Id.* at 50-51, 60. It reversed on the grounds that the right was not clearly established and was instead analyzed at an impermissibly high level of generality. *Id.* at 59-60. And the Court reversed on these grounds despite its agreeing with the District Court that there was an underlying constitutional violation. *Id.* at 50-51, 59-60.

Instead of identifying clearly-established precedent, plaintiffs rely wholly on *Helling*, which they deem to be sufficient *ex cathedra*: "This court need look no further than *Helling*." (Doc. 61 p. 17). But *Helling* involved only second-hand tobacco smoke, not invisible and imperceptible radon gas levels, or radon testing, mitigation, and remediation in prison. *See* (Doc. 52-1 p. 14-15, 13). Read as a whole, plaintiffs' complaint and claims for relief are *sui generis* and unprecedented.

Even if *Helling* somehow suggested the alleged radon exposure and testing in prison amounted to constitutional tort (which the defendants do not concede), that still fails to overcome qualified immunity. *See Wesby*, 2018 WL 491521, at *11. "It is not enough that the rule is suggested by then-existing precedent." *Id.* Instead,

"[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 2018 WL 491521, at *11. Given the unique aspects of radon detection and the complete absence of any sufficient constitutional authority in this Circuit regarding radon exposure in prison, there is no precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *See id.*[1]

In sum, no decision from the Second Circuit or the Supreme Court *even discusses* radon exposure to inmates in prison. That alone suffices to immunize the individual defendants from suit. *See Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)(awarding qualified immunity because "[n]o decision of this [Supreme] Court *even discusses* suicide screening or prevention protocols.")(emphasis added).

b.   **Access to courts**

Qualified immunity also bars the access-to-court claims. Connecticut's unique Claims Commission process (and its specific statutory changes and legislative history) alone entitles Dzurenda, Semple, and Falcone to qualified immunity. The plaintiffs concede the access-to-court claims are unique or "unusual." (Doc. 61 p. 19); *see Wesby*, 2018 WL 491521, at *13 (the fact that a case is unusual indicates no clearly established right was violated.). And they fail to

---

[1] It bears repeating that "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." *Coollick v. Hughes*, 699 F.3d 211, 220 (2d Cir. 2012)(quotations omitted).

identify any sufficient precedent establishing that a Warden or Commissioner of Correction commits an access-to-court violation by declining to affirmatively inform prisoners of a potential negligence action against the State, or in declining to assist prisoners in discovering tort claims against a third party. *See* (Doc. 61).

It cannot be overemphasized that 1) plaintiffs' access-to-court claims center entirely on their alleged inability to pursue negligence claims before the Claims Commissioner (Doc. 52-1 p. 24), and that 2) nowhere do the plaintiffs contend that Dzurenda, Semple, or Falcone confiscated, destroyed, or directly interfered with the plaintiffs filing negligence claims. Instead, plaintiffs' claims are based solely on the relevant defendants' failure to inform plaintiffs of potential state-law tort actions against a third party, the State of Connecticut. No clearly-established law holds 'beyond debate' that this amounts to a constitutional violation.

Plaintiffs fail to cite a single case holding that the constitution requires Wardens or Commissioners to even provide legal materials to inmates regarding state-law torts, let alone a case requiring those officials to actively inform inmates of potential negligence actions against third parties. The defendants' research revealed no such precedent either. This is not surprising since the Supreme Court explicitly rejected ("disclaimed") such a requirement in *Lewis v. Casey*:

"These statements [in *Bounds v. Smith*] appear to suggest that the State must **enable the prisoner to *discover* grievances** . . . . These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we

7

now disclaim them." *Lewis*, 518 U.S. at 354 (bold added, italics in original). Instead, the access-to-court claims further demonstrate that plaintiffs are attempting to constitutionalize negligence claims.

Given the governing law and undisputed unique nature of the access-to-court claims (Doc. 61 p. 19), qualified immunity bars the damages claims against Dzurenda, Semple, and Falcone. The Court should dismiss them.

**2.    The Eleventh Amendment bars the equitable claims.**

Eleventh Amendment immunity is a fundamental constitutional protection. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145 (1993)(citation omitted). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity." *Id.* at 146. Its protections implicate the collateral-order doctrine and include the right of interlocutory appeal when the immunity is denied improperly because the "ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated." *Id.* at 146, 145.

   a.    *Ex parte Young* **analysis**

Most of the dispute in this case regarding Eleventh Amendment analysis involves whether the *Ex parte Young* exception applies. The exception is narrow. *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146. To invoke it, plaintiffs must 1) allege an ongoing violation of federal law and (2) seek relief properly

characterized as prospective. *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007)(quotations omitted). They fail to do so.

They do not seek prospective relief, as they do not seek orders requiring the defendants to refrain from engaging in certain allegedly unconstitutional acts. Instead, they seek mandatory relief requiring expenditure of state funds to provide specified medical care for past events (namely the alleged past radon exposure). And they seek mandatory relief in the form of testing the Garner facility, when the Complaint suggests that Garner has already been tested and that any alleged "damage done" to plaintiffs has ceased. (Doc. 49 p. 16-17 ¶ 68); (Doc. 52-1 p. 33-34).

The claims seeking medical monitoring and care are particularly problematic. Those claims seek expansive medical care in a case that does not assert medical claims but instead asserts conditions-of-confinement claims. That relief therefore is not "sufficiently narrow to retain its character as a mere case-management device." *See Green v. Mansour*, 474 U.S. 64, 71 (1985). It is indistinguishable from future economic damages (Doc. 52-1 p. 36-37); (Doc. 61 p. 9). And because plaintiffs would require the State to provide that relief, those claims are "in practical effect indistinguishable in many aspects from an award of damages against the State." *See Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

    **b.**   *Pennhurst* **analysis**

Further, *Pennhurst* analysis also bars all claims seeking medical monitoring or medical care as injunctive relief. *See Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 106 (1984). While *Edelman v. Jordan* bars those claims and relief because they are indistinguishable from money damages claims against the state, (Doc. 52-1 p. 30-37); (Doc. 61 p. 7-14), *Pennhurst* also bars them because they seek an injunction from a federal court requiring state officials to comply with state law. Throughout their brief, plaintiffs claim that Department of Correction directives and the *community standard* of medical care render a variety of testing and monitoring to be appropriate. (Doc. 61 p. 3, 7-8, 9, 14). And they seek that care in the form of an injunction requiring the defendants to comply with the Department directive and with the community standard. (Doc. 61 p. 7-14).

But there is no constitutional protection against medical negligence in prison. *See, e.g.*, *Sonds v. St. Barnabus Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)("disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim."). Instead, that is an issue of Connecticut tort law and Department of Correction policy. So in effect, plaintiffs seek an injunction requiring state officials to comply with Connecticut law regarding medical malpractice. That violates the Eleventh Amendment under *Pennhurst* rationale.

3. **Conclusion**

The Court should grant the defendants' motion (Doc. 52) and should dismiss this lawsuit entirely.

DEFENDANTS
Semple, Meachum, Armstrong,
Lantz, Arnone, Dzurenda,
Falcone, Batten, and Link
in their individual and official capacities

GEORGE JEPSEN
ATTORNEY GENERAL

JANE R. ROSENBERG
SOLICITOR GENERAL

BY: __/s/_Stephen R. Finucane_____
Stephen R. Finucane
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct30030
E-Mail:  stephen.finucane@ct.gov
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that on January 25, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

__/s/_Stephen R. Finucane_____
Stephen R. Finucane
Assistant Attorney General