UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARRY VEGA, et al., | | CIVIL NO. 3:17-0107 (JBA) |
| *Plaintiffs* | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT SEMPLE, et al., | : | |
| *Defendants* | : | JULY 11, 2018 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

I.      **The supplemental DOC exhibits counsel that Eleventh Amendment sovereign immunity does not bar the federal official capacity claims given the prospective relief requested.**

A. **DOC Administrative Directive 5.3 Life and Safety as amended June 29, 2018 and Garner Roll Call Notice dated June 4, 2018 entitled "Radon Remediation Project"**

It seems more than a little coincidental that DOC adopts a policy on radon testing, almost

four years after the discovery of excessive radon exposure at Garner, on the eve of the scheduled

oral argument in the instant matter. Given that the defendants are claiming that there is no

"clearly established right" with respect to the issue of radon testing in correctional facilities, they

have now created a document that purports to set forth this clearly established right moving

forward.   Because there has yet to be any discovery in this matter, plaintiffs and this court would

1

have been blindsided by this Administrative Directive on radon testing that now expressly

includes "inmate housing areas[,]" (Paragraph 7 b, p. 5), had counsel for the plaintiffs not

anonymously received from a correctional officer a copy of the Garner Roll Call Notice dated

June 4, 2018, the substance of which stands in stark contrast to the newly adopted radon testing

protocol.

Plaintiffs concede that the Garner Roll Call Notice predated the June 29th amended

Administrative Directive on Life and Safety and thus the radon testing being conducted was not

required to satisfy its mandates. It is however in those very areas that do not conform with the

newly adopted radon protocol that makes the juxtaposition of these documents so close in time

seminal to the issues confronting this court with respect to the pending Motion to Dismiss.

As the radon protocol properly provides at subsection (a)(ii), "[r]adon detection within

facilities shall be conducted during the period ranging from November 1 through March 31."

Such protocol reflects the reality that radon levels are lower in the summer. Moreover, greater

concentrations of radon can enter the buildings during winter months because less radon in the

soil is able to escape through the frozen ground thus the building pulls in higher concentrations

of it. Closed building conditions during the winter also keep radon gas levels from being diluted

by fresh air. The June 4, 2018 Garner Roll Call Notice however indicates that radon testing will

occur on June 13 through 15 as a continuation of the "Radon Remediation Project," the very time

2

of the year when radon levels are at their lowest.   Plaintiffs from the outset have submitted that the radon remediation installed in the fall of 2014 was insufficient for the entirety of this 245,000 square foot facility because those housing areas with a 693 inmate capacity were never tested. The summer timing of this "hidden" radon testing, which includes drilling holes to check the air flow, strongly suggests that the radon levels in at least some parts of Garner are in excess of the EPA accepted level of 4.0 pi/Cl.

It is particularly distressing given the close proximity in timing of the newly established protocol for radon testing and the Garner Roll Call Notice date June 4, 2018 that once again the defendants have failed to put the inmates housed at Garner on notice that the radon levels may well be in excess of acceptable limits, putting their health at risk from long term exposure to a known carcinogen. The Garner Roll Call Notice requires that it be read to the three daily shifts of correctional officers reporting for duty from June 5 to June 12, 2018 to ensure that all correctional officers have been  notified as is required by the Department of Public Health Guidelines when radon testing is ongoing. Correctional officers will also have access to the results of this out of the ordinary radon testing in accordance with DPH policy. Once again, a deliberative decision has been made not to test those areas where the inmates are housed.  The only inference to be drawn from this summer radon testing at Garner is that areas of the facility exceed the EPA action level of 4.0 pi/Cl.  That defendants again failed to notify inmates of such

radon testing, with this lawsuit pending, further counsels that this matter should proceed to

discovery as to the prospective relief sought.

**B.  The failure to include asbestos within the definition of toxic substances listed in the newly adopted DOC Life and Safety Administrative Directive counsels that the well known, long term health risks associated with exposure to friable asbestos, which mimic high radon exposure, further supports that a legally cognizable, clearly established right exists that plaintiffs not be subjected to the health risks of another known carcinogen such that the defendants are not entitled to qualified immunity.**

It is undisputed that friable asbestos is a toxic substance and a known carcinogen. It is also

undisputed that inmates, when confined in conditions that expose them over a period of time to

friable asbestos, have a cognizable Eighth Amendment claim because deliberate indifference to a

prisoner's future serious medical needs constitutes cruel and unusual punishment as established

by *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

"'[T]he absence of an identical factual scenario does not necessarily yield a conclusion that

the law is not clearly established.' (Citation omitted) '[D]etermining whether a right is 'clearly

established' is not subject to mathematical precision'. Id. (citing *LaBounty v. Coughlin*, 137 F.3d

68, 73 (2d Cir.1998)). 'The contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right. This is not to say that an

official action is protected by qualified immunity unless the very action in question has

previously been held unlawful, . . .  but it is to say that in the light of pre-existing law the

4

unlawfulness must be apparent.' *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citing Mitchell [v. Forsyth], 472 U.S. [511,] 535 n. 12, 105 S.Ct. 2806 *(1985). " Atwood v. Town of Ellington*, 468 F.Supp.2d 340, 352 (D.Conn. 2007).  By analogy, the Second Circuit's analysis in *LaBounty v. Coughlin*, 137 F.3d 68 (2d. Cir. 1998) that the failure to protect an inmate from exposure to the health risks of friable asbestos constitutes a viable Eighth Amendment claim is instructive here.

There was no Supreme Court case that established that an inmate's exposure to friable asbestos over an extended period of time constituted an Eighth Amendment violation. Rather, the Second Circuit noted that "[f]riable asbestos was recognized by Congress to be a dangerous toxic chemical in the early 1970s and was listed as a 'hazardous air pollutant' in the regulations to the Clean Air Act. 36 Fed.Reg. 5931 (1971). [The Second Circuit] also acknowledged in 1988 that friable asbestos posed a significant health risk because airborne particles can become lodged in lungs and in the respiratory tract and over time can lead to asbestosis, mesothelioma and lung cancer. See Environmental Encapsulating Corp. v. City of New York, 855 F.2d 48, 50 (2d Cir.1988). " *LaBounty v. Coughlin*, 137 F.3d at 74 n. 5.

The case for the significant health risks of exposure over time to high levels of indoor radon is comparable.  The substantive health risks associated with indoor radon exposure are underscored by the fact that in 1988Congress added Title III on Indoor Radon Abatement to the

Toxic Substances Control Act. That same year, the Surgeon General of the United States warned

that radon is the second leading cause of lung cancer in the United States and the leading cause

of lung cancer in individuals who never smoked. According to the World Health Organization,

lung cancer risk rises sixteen percent (16%) with every 2.7 pCi/L increase in radon exposure.

All major U.S. health organizations, such as the Centers for Disease Control and Prevention, the

American Lung Association and the American Medical Association, concur with estimates that

radon causes thousands of preventable lung cancer deaths each year.

Moreover, fifteen (15)[1] of the twenty one (21) state correctional facilities include a school

established pursuant to DOC's Unified School  District # 1.  DOC's Student and Parent/Guardian

Handbook  states in relevant part with respect to Asbestos that "[l]egislation requires all school

buildings to be reevaluated to determine if asbestos is present and if it poses a significant health

hazard to the buildings occupants.  The Department of Correction meets or exceeds these OSHA

standards." (Exhibit   p. 5) Similarly, legislation requires that schools tests for radon since 2003

in Connecticut.  Just as with asbestos, there is a clearly established right that radon not pose a

significant health hazard to the occupants at Garner, inmates and staff alike, a clearly established

right that precedes in time the newly adopted DOC radon testing protocol that went into effect

---

[1] Fifteen DOC facilities have schools as part of Unified School District # 1: Bridgeport CC, Brooklyn CI, Cheshire CI, Corrigan-Radgowski CC, Enfield CI, Garner CI, Hartford CC, MacDougall CI, Manson Youth Institution, New Haven CC, Northern CI, Osborn CI, Robinson CI, Willard-Cybulski CI, York CI.

6

ten days before this matter was originally scheduled for oral argument.

Finally, plaintiffs submit that the supplemental Second Circuit authority cited by defendants, *Burns v. Martuscello*, properly read, supports plaintiffs' contention that defendants are not entitled to qualified immunity. "Although [the Second Circuit] generally look[s] to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right, the absence of a decision by this Court or the Supreme Court directly addressing the right at issue will not preclude a finding that the law was clearly established so long as preexisting law clearly foreshadows a particular ruling on the issue." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009); Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000) ) (internal punctuation omitted)." *Burns v. Martuscello*, 890 F.3d 77, 94 (2d. Cir. 2018).   The Estelle, Helling, LaBounty line of cases clearly foreshadows that exposing inmates to the substantial future health risks associated with high levels of indoor radon gas is a clearly established right that the defendants purposefully and intentionally violated by their disparate treatment of the correctional staff, who were permitted to file workers' compensation claims for future injuries associated exposure to high levels of indoor radon gas, and inmates who they once again fail to disclose that this summer's radon testing portends a continuing

problem with the substantive medical risks associated with ongoing exposure to high radon levels.

**Conclusion:**

"Inmates ought to be able to complain about 'unsafe, life-threatening condition[s] in their prison' without waiting for something to happen to them. After all, it is the prison administration, not the inmates, who are in the best position to determine the precise nature of any such contaminants in those situations where health hazards are not readily apparent to the unaided senses." *Gibbs v. Cross*, 160 F.3d 962, 965-66, (3rd Cir. 1998).

Exposure to high levels of radon gas poses a greater environmental risk for developing lung cancer and other chronic respiratory diseases than second hand smoke (ETS). As the Second Circuit noted,

> even before *Helling* was decided, plaintiffs possessed clearly
> established rights with respect to their health conditions. In
> *LaBounty*, a case involving the alleged exposure of prison inmates
> to asbestos, we held that the right at stake was not the narrow right
> to be free from exposure to asbestos, but a broader "right to be free
> from deliberate indifference to serious medical needs." LaBounty,
> 137 F.3d at 74. We noted that this right had been clearly
> established as far back as 1976 by *Estelle v. Gamble*, 429 U.S. 97,
> 104 (1976). See id. We determined that "[g]iven the known
> dangers of friable asbestos in 1991-92," a reasonable person would
> have known that exposure to asbestos could violate the Eighth
> Amendment. *LaBounty*, 137 F.3d at 74. Similarly, the medical
> dangers of ETS were well known to defendants; Sing Sing Policy
> and Procedure 104 itself states that "the health risks associated

8

> with smoking are well-documented." Given the known dangers of
> ETS, we conclude that a reasonable person would have understood
> that exposing an inmate to high levels of ETS could violate the
> Eighth Amendment.

*Warren, Benton, and Murray v Keane, et al*, 196 F.3d 330, 333 (2d Cir. 1999). Such analysis is

equally applicable with respect to exposing an inmate to high levels of indoor radon gas.

"[A] court need not have passed on the identical conduct in order for its illegality to be

"clearly established." See *LaBounty v. Coughlin*, 137 F.3d at 74. "[T]he crucial question [is]

whether the official acted reasonably in the particular circumstances that he or she faced."

*Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). The prison administration defendants here

have abdicated their responsibility to protect inmates at Garner from exposure to the known

carcinogen radon. That the defendants, with this lawsuit pending, once again failed to notify the

inmates at Garner as to the present risk of high radon exposure as evidenced by the Garner Roll

Call Notice dated June 4, 2018 disseminating the unusual procedure of summer radon testing to

correctional officers only counsels that the defendants cannot prevail on the issue of qualified

immunity at this preliminary stage of the litigation.

Plaintiffs submit that the Garner Roll Call Notice dated June 4, 2018 represents ongoing

evidence that that prison officials acted with "'a sufficiently culpable state of mind,' which the

courts have defined as 'deliberate indifference' to an inmate's health or safety. See, *Wilson v.

Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *McPherson v. Coombe*, 174

9

F.3d 276, 280 (2d Cir. 1999); *Hayes v. New York City Department of Corrections*, 84 F.3d 614,

620-21 (2d Cir. 1996)." *Pack v. Artuz*, 348 F.Supp.2d 63, 72 (S.D.N.Y. 2004).  Defendants'

Motion to Dismiss should be denied in its entirety. This class action should engage in discovery

and the class certification process.

                Plaintiffs,

                By:   /s/ Lori Ann Welch-Rubin ct09866
                Lori A. Welch-Rubin
                Federal Bar # ct09866
                37 Northrop Road Extension
                Bethany, Connecticut 06524
                Telephone: (203) 314-8708
                Fax : (203) 865-5444
                Email: lwelchrubin@gmail.com

## CERTIFICATION

        Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.
        Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss was also mailed postage prepaid to Harry Vega, Inmate # 24806, MacDougall-Walker Correctional Institution, 1153 East Street South, Suffield, CT 06080.

                By:   /s/ Lori Ann Welch-Rubin ct09866